UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:09CV46-J

REBECCA SUE SMITH                                              PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court is claimant Rebecca Smith's Complaint seeking judicial review of the unfavorable decision rendered by the defendant Commissioner denying her claim for Supplemental Security Income Benefits ("SSI"). After examining the administrative record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision is supported by substantial evidence and must be upheld.

PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on February 5, 2008 alleging that she became disabled on September 1, 2007 at age 40 as a result of bipolar, and neck and leg pain (Tr. 131). Claimant's previous work experience includes housekeeper and aide/sitter to the elderly (Tr. 20). Following a hearing at which both the claimant and a vocational expert offered testimony, Administrative Law Judge Phylis Pierce ("ALJ") found that the claimant has a severe mental impairment based on diagnoses of bipolar disorder not otherwise specified, obsessive compulsive disorder, anxiety disorder and history of alcohol abuse, methadone abuse, marijuana use, and cocaine abuse (Tr. 10). However, the ALJ found that plaintiff remains capable of performing a full range of work, but with certain non-exertional limitations, stating:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is restricted to simple, repetitive, routine and low stress jobs. (Tr.11)

Plaintiff appeals from this unfavorable decision.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by an error of law, and to determine whether substantial evidence supports the decision of the Commissioner, 42 U.S.C. §405(g); Elam ex. Rel. Golay, v. Commissioner, 348 F.3d 124, 125 (6th Cir. 2003). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981); Jones v. Secretary of HHS, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the court even thought the record might support a contrary conclusion, Smith v. Secretary of HHS, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts," Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

Plaintiff argues that the ALJ committed the following errors: 1) the ALJ should have given controlling weight to the opinions of consultative examining psychologist Robert W. Adams instead

of the opinions of the non-examining state agency psychologists; 2) the GAF scores of record require a finding of total disability; 3) the claimant's records establish listing level severity pursuant to Listing 12.04 3.B; 4) the ALJ erred by not having a medical expert testify at the hearing to rebut the findings of psychologist Adams; and 5) the ALJ was required to accept the vocational testimony indicating that if psychologist Adams' assessment were accepted, claimant would be incapable of performing any jobs in the national economy.

## ANALYSIS

1.  <u>Claimant argues that the ALJ should have given controlling weight to the opinions of the consultative examining psychologist Robert W. Adams instead of the opinions of the non-examining state agency psychologists.</u>

Consultative examining psychologist Robert Adams evaluated the claimant on August 28, 2008 on the referral of claimant's attorney and provided a report of his findings (Tr. 444-451). Mr. Adams concludes that she is able to understand, retain and follow simple instructions, that she would have difficulty sustaining attention to perform simple tasks in a timely manner when she is very distractible in a manic state and lacks energy when she is depressed. He indicated that she gets along reasonably well with other people most of the time, but would nonetheless be unable to tolerate the pressures of day-to-day work activities. (Tr. 450-451)

The ALJ gave little weight to the opinions of Mr. Adams, stating: "The undersigned gives little weight to the opinion of consulting psychologist, Dr. Adams, as his opinion is based on a one-time examination, is inconsistent with mental health treatment notes, and is based largely on the claimant's subjective complaints. It is clear that Dr. Adams' examination purpose was to provide a report supporting disability and not for treatment." (Tr. 13) Instead, the ALJ chose to rely upon

the assessments of the state agency psychologist who found the claimant retains the ability to perform simple, repetitive tasks in a simple, routine setting.

The Court finds under the circumstances that the ALJ's refusal to give controlling weight to the disabling opinions of consultative psychologist Adams is supported by substantial evidence. Much of Mr. Adams' report contains a recitation of the claimant's subjective complaints, and the prognosis is based upon claimant's apparent representation that she is seeing a therapist twice per month and a nurse practitioner once per month for medications (Tr. 450). The Pennyroyal Center records do not reflect that level of treatment adherence, either in attendance or in prescription compliance. Additionally, the Pennyroyal records reflect much more extensive past methamphetamine use, continued use of alcohol and marijuana, and claimant's own admission that many of her problems stem from drug use (Tr. 388). Finally, it is noteworthy that Mr. Adams' report is not that of a treating physician which would be entitled to greater weight and justification for its rejection.

Of particular importance to this Court is that the treatment records from Pennyroyal Center provide no indication that the claimant is incapable of performing work, and no treating source has opined that she is unable to work. To the contrary, the September 17, 2007 treatment note reflects that the claimant's "primary focus" was to stay clean and try to find full-time employment (Tr. 389). As late as February 2008, she was noted as "trying to find employment." (Tr. 394) The Court finds that the ALJ's rejection of the opinion of Mr. Adams and acceptance of the state agency reviewing physician opinions are supported by substantial evidence.

2.      Claimant's GAF scores of record require a finding of disability.

Citing to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), claimant argues that her GAF scores of 50 and 45 as assigned by the Pennyroyal Center physicians and by psychologist Adams respectively "reflect a total disability." Plaintiff's Fact and Law Summary at page 7. According to the DSM-IV, Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV at 32. The range 41-50 is described as appropriate for "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

Leaving aside the principle that disability is a legal decision and not a medical decision, it is readily apparent that the GAF, standing alone, is a poor tool for determining ability to engage in substantial gainful employment. One reason is that, "occupational functioning" is but one of the three fields considered in assessing the GAF. Another problem with using it as a tool for determining disability is that any system that seeks to compress all psychiatric and psychological considerations into a scale of one to one hundred is necessarily approximate, subjective, and subject to considerable variation in interpretation even among experts who agree with one another about a patient's degree of impairment in any specific area. Finally, it must be noted that some factors that might result in a low GAF would be largely irrelevant to occupational capacity (for example, suicidal ideation), and it is equally clear that someone with a higher GAF might, in fact, have symptoms that severely interfered with the ability to work (for example, conflicts with co-workers).

Consequently, while the GAF may represent a single piece of information to be considered in a disability inquiry, it cannot substitute for specific information about particular capabilities and characteristics. It necessarily follows that where there is specific information available, as there is in this case, vacation of a decision solely on the basis of a GAF number is inappropriate. Accordingly, claimant's argument that her GAF scores are tantamount to disability is rejected.

3.    <u>The claimant's records establish listing level severity pursuant to Listing 12.04 3.B.</u>

In her decision, the ALJ carefully evaluates the claimant's mental impairments and analyzes them according to the Mental Disorders Listing requirements. In order to meet Listing 12.04 3.B, the claimant must show bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes), and resulting in at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence or pace; or 4) repeated episodes of decompensation, each of extended duration. The ALJ's review of the evidence resulted in no findings of marked limitations.

The ALJ specifically found from the record that the claimant could perform most normal activities of daily living, and gave her a moderate restriction in that area. The ALJs findings in this regard are supported by the state agency findings as well as the claimant's admissions that she can cook, clean house, and shop for groceries. Regarding the realm of social functioning, the ALJ found only mild restrictions. This finding is supported by the claimant's work history, regular church attendance, living arrangements, and psychologist Adams' finding that she gets along reasonably well with others. In the realm of concentration, persistence or pace, the ALJ found only moderate difficulties which is consistent with the state agency reviewing psychologists as well as some of the

treatment records from the Pennyroyal Center. In sum, the ALJ's finding that the claimant does not meet or medically equal Listing 12.04 is supported by substantial evidence and must be upheld by this Court.

4. <u>The ALJ erred by not having a medical expert testify at the hearing to rebut the findings of examining psychologist Adams</u>.

The claimant argues that the ALJ should have called a medical expert at the hearing to rebut the findings of Dr. Adams. An ALJ is not required to obtain an updated medical judgment from a medical expert simply because the ALJ is in receipt of additional medical evidence. The ALJ did not "play doctor" in this instance, because her functional findings were taken directly from either Dr. Adams' own report, or from the reports of the reviewing state agency psychologists. An ALJ is not required to call an expert to testify when the record contains sufficient evidence upon which to decide the claim. The Court finds no error in the ALJ's failure to enlist a medical expert in this case.

5. <u>The ALJ was required to accept the vocational testimony indicating that if psychologist Adams' assessment were accepted, claimant would be incapable of performing any jobs in the national economy</u>.

As outlined above, the ALJ stated sufficient reasons for declining to accept the disabling opinions of consultative psychologist Adams. The claimant argues as though this is the only acceptable opinion in the record and no other medical evidence. That is simply not the case. Here, the ALJ's RFC was based upon the ALJ's study of the record as a whole. It incorporates elements of Mr. Adams' assessment, as well as elements of the state agency opinions of record. Given the ALJ's consideration of the record as a whole and her articulation of the specific reasons behind her rejection of Mr. Adams' assessment, this Court is persuaded that the ALJ properly discharged her duty under the regulations.

## CONCLUSION

The record contains ample evidence supporting the ALJ's RFC determination and her finding that the claimant is not disabled. Although the record contains differing opinions as to the claimant's functional limitations, the Court finds that the ALJ properly performed her duty as the trier of fact in resolving conflicts in the evidence. See Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Accordingly,

IT IS ORDERED: 1) the decision of the Commissioner is supported by substantial evidence and is AFFIRMED. 2) A Judgment in conformity with this Memorandum Opinion is entered.